UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDI GOODRICH,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TOWN OF ORANGE and JOHN RAPPLEYE, in his official and individual capacities,<br><br>　　　　　Defendants. | Civil Action No. 25-CV-6091<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiff, by her attorney, Laura Matlow Wong-Pan, Esq., complaining of the Defendants herein, respectfully alleges as follows:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 to address violations of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and under the New York Human Rights Law, Executive Law §296.

2. Plaintiff alleges that Defendant John Rappleye, acting under color of state law and as a policymaker for the Town of Orange, sexually harassed her and subjected her to a hostile work environment, and then retaliated against her when she reported the harassment. Plaintiff further alleges that the Town of Orange, through its deliberate indifference and failure to act, allowed and perpetuated the discriminatory and retaliatory conduct.

3. Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorney's fees and costs as authorized by law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) as this action arises under Federal laws and the U.S. Constitution, including 42 U.S.C. §1983.

1

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the events or omissions giving rise to this action occurred in the Western District, and all Defendants reside or are located within the Western District.

## PARTIES

7. Plaintiff Brandi Goodrich is an individual residing in Beaver Dams, New York. At all relevant times, Plaintiff was employed by the Town of Orange.

8. Defendant Town of Orange is a town in Schuyler County, New York, duly organized, created, and existing under and by virtue of the laws of the State of New York.

9. Defendant John Rappleye, Highway Superintendent for the Town of Orange, is an individual and this action is commenced against this defendant for engaging in conduct under color of law in his individual capacity as well as his official capacity as an agent of the defendant Town of Orange.

10. At all relevant times, both the Town of Orange and Rappleye have been Goodrich's employers.

## FACTUAL ALLEGATIONS

11. Starting on or about January 23, 2024, Defendant John Rappleye, on behalf of the Town of Orange, began a pattern of sexual harassment and sex discrimination against Plaintiff after hiring her as an employee in the Town of Orange Highway Department.

12. Plaintiff was hired by John Rappleye on behalf of the Town of Orange on about January 23, 2024.

13. Plaintiff initially met Mr. Rappleye in about September 2023, at a local

bar/restaurant, where she was having dinner with her boyfriend, and he was campaigning for reelection as Highway Superintendent.

14. When Rappleye met the Plaintiff, while he was campaigning, he encouraged her to apply for a job at the Town Highway garage, and he personally hand-delivered a job application to her house shortly after meeting her.

15. As Highway Superintendent, Rappleye has full authority to set policy for the Highway Department. This authority also includes broad authority over personnel issues, including authority to hire and fire Highway Department employees, to suspend, discipline, promote, and demote employees, and to assign employees significantly different duties and responsibilities.

16. However, the Highway Superintendent's discretion concerning personnel decisions is limited by the requirements of Federal and State law, including among other laws, the laws prohibiting sexual discrimination, prohibiting sexual harassment, and prohibiting retaliation for reporting discrimination or harassment in the workplace.

17. Mr. Rappleye hired Plaintiff initially as a laborer.

18. When Mr. Rappleye hired Plaintiff, he knew that she did not possess a full Commercial Drivers' license ("CDL").

19. Within a day or two after hiring Plaintiff, Mr. Rappleye told Plaintiff that he wanted her to operate equipment and to earn more than $15/hour, so he was going to promote her to a Motor Equipment Operator (MEO) position.

20. Plaintiff was told to accompany Mr. Rappleye to the Civil Service office that had jurisdiction over the Town of Orange, where he asked Plaintiff to rewrite the first page of her job application, and delete the word "laborer" after the words "Position or Examination Title," and

replace it with "Town of Orange Operator." The Civil Service employee informed Mr. Rappleye that there was no "Operator" position, and the word "MEO" was handwritten on the application with Rappleye's initials.

21. Thereafter, Mr. Rappleye immediately placed Plaintiff to an MEO position instead of the laborer position.

22. Mr. Rappleye was determined to hire Plaintiff, regardless of her CDL status.

23. At the beginning of her employment, Mr. Rappleye told Plaintiff that she would need to operate a 1-ton truck, and that a full CDL was not necessary.

24. Plaintiff possesses a Commercial Learners Permit, and Mr. Rappleye was given a photocopy of that permit.

25. Plaintiff remained an MEO from January 2024 to May 2024, when Mr. Rappleye promoted her to a position as his Deputy.

**The Sexual Harassment Started While Plaintiff was MEO**

26. While she worked as an MEO, Rappleye began using sexually charged language and behavior in Plaintiff's presence and expressing a sexual interest in her.

27. For instance, on one occasion, Mr. Rappleye asked Plaintiff for personal information about her relationship with her boyfriend, which Plaintiff found to be inappropriate and embarrassing.

28. On other occasions, Mr. Rappleye commented about Plaintiff's appearance, and head things like, "I bet you're soft all over," and commented on the size of her breasts.

29. On another occasion, in about March or April 2024, when Plaintiff was helping to roll out the roads with a roller, Mr. Rappleye suggested to Plaintiff that she wear a bikini. At the time, Defendant Rappleye was working on the roads with her, using a grader.

4

30. There was a road in the Town of Orange called "Sexton Hollow," and on another occasion, Mr. Rappleye asked Plaintiff over a CB radio, broadcasting his comments to County employees, "have you ever had sex up in the hollows?" This caused Plaintiff great embarrassment.

31. Mr. Rappleye often made inappropriate sexual comments in Plaintiff's presence about other women. For instance, he had nicknames for women who stopped in the Town Highway Garage, referring to one woman as "Tits Magee" and the other as "Smelly Crotch."

32. The misogynistic nicknames added to the hostile work environment.

33. The misogynistic comments were only equaled in offensiveness by his racist comments while serving the Town as a Town of Orange official, in which he frequently referred to people as n--er (the N-word) or white n--er and referred to at least one person as a "Guinea mother fucker."

**Plaintiff Reports the Harassment on about May 13, 2024**

34. In early to mid-May 2024, after Plaintiff had tolerated his inappropriate comments for months, Mr. Rappleye informed Plaintiff that he was promoting her to be his Deputy.

35. Plaintiff was promoted based on the implication that she would have to tolerate more sexual harassment.

36. However, after she was told she was being promoted and just before being sworn in, Plaintiff reported Mr. Rappleye's behavior to the Town.

37. Her anticipation is that if she reported the behavior and made it known, that something would be done and the harassment would stop, but unfortunately it just accelerated.

38. Plaintiff reported Rappleye's misogynistic conduct to the Town Superintendent on about May 13, 2024.

5

39. The Town Supervisor, noting that this is how Rappleye normally behaves, agreed to talk to Mr. Rappleye about his conduct.

40. The Town Supervisor was aware that Mr. Rappleye had difficulty managing his anger and had a retaliatory nature, and told Plaintiff that she might not use Plaintiff's name when she spoke to Rappleye, for Plaintiff's protection, but might say that she had heard about his inappropriate comments from others.

41. On knowledge and belief, around the time when Plaintiff was sworn into the Deputy position, the Town Supervisor spoke to Rappleye at the Town offices about his inappropriate behavior.

### The Sexual Harassment and Demeaning Behavior Accelerated when Plaintiff became Rappleye's Deputy

42. After Plaintiff became the Deputy, and despite the Town Supervisor's involvement, Defendant Rappleye's unwelcome sexual advances, comments, and physical conduct accelerated and became even more extreme, as his behavior of constantly demeaning Plaintiff and calling her names.

43. Plaintiff was treated worse than the male employees in the office and was repeatedly yelled at by Mr. Rappleye and called names, such as "stupid" and "lazy fucker' and told by Rappleye: "you're a waste of money."

44. For example, on about May 22, 2024, Mr. Rappleye yelled at Plaintiff repeatedly while directing her to help him move a grader, telling her that she was not smart, that she was stupid for parking in a particular parking area, and then he proceeded to kick a sign repeatedly while directing Plaintiff to keep holding it, although he could easily see that the sign was repeatedly hitting her hard in the head each time that he kicked it with his boot.

45. Mr. Rappleye disregarded all norms of professional and collegial behavior, when

6

it came to Plaintiff, and his behavior was sexually aggressive and psychologically abusive.

46. On about May 28, 2024, during another incident of unreasonable rage when Plaintiff was present with him, Mr. Rappleye threw his phone at the wall, yelling that the person on the phone was a "fat, worthless cunt."

47. On about June 4, 2024, Mr. Rappleye brought Plaintiff to Ithaca College for a training and asked her to accompany him on a car ride in Ithaca. During that drive, his chatter became more sexual and he confronted Plaintiff with conversation about the sexual "69" position and about oral sex. His conversation topics caused Plaintiff to feel disgusted and uncomfortable.

48. On about June 5, 2024, Mr. Rappleye drove Plaintiff home from Ithaca, and intentionally navigating through a circuitous route, even traveling into Pennsylvania, and making sexual comments throughout the trip. Comments included "I bet you're soft all over. ALLL over," while leering at her breasts and body.

49. On or about July 9, 2024, Mr. Rappleye directed Plaintiff to join him on another ride in his truck to drive around Town roads. Plaintiff had no option but to accompany him, although she wanted to study for her CDL test. Instead, he pulled her away from the office, and once away, he offered her $200 to flash her breasts to him. When she expressed shock, he increased the offer, saying, "$400?" He then made vulgar hand motions to mimic the appearance of squeezing breasts, while he thrusted his hips back and forth, while sitting in his car seat.

50. Plaintiff was fearful of Rappleye, and fearful of losing her job if she rocked the boat. He forced her to listen to his offensive comments and tolerate his behavior, in return for getting time to study for the CDL test using Town equipment, as she was entitled to do under the union contract.

51. On July 9, 2024 and other occasions, Plaintiff felt frozen with fear and speechless

about Rappleye's conduct.

52. Through these episodes, Plaintiff feared that she would lose her job if she reported Rappleye's conduct or quarreled with him.

53. Rappleye often directed Plaintiff to hop in the pickup truck with him, and then drove around on the back roads while he interjected sexual comments, leaving her with the impression that he just wanted to be alone with her.

54. On about July 23, 2024, Rappleye told Plaintiff to accompany him to pick up an alternator for an excavator. Once in the truck, the inappropriate comments resumed, including asking "have you ever been nibbled on?" and adding, "like your tits," and he talked to her (or at her) about "blowjobs," and made additional sexually charged comments, while she sat in silence.

55. During the July 23, 2024 car ride, Plaintiff told Rappleye to stop and told him that he made her nervous.

56. Despite Plaintiff's efforts to signal to Rappleye that his overtures were offensive and unwelcome, he persisted in the conduct.

57. On July 24, 2024, Defendant Rappleye's sexual harassment reached a crescendo, and made Plaintiff fear for her safety.

58. During the July 24 car ride, Rappleye not only told Plaintiff again that he wanted to see her breasts, but he then went into vulgar detail how digitally raping her, using explicit and threatening language.

59. Mr. Rappleye knew that he was threatening to sexual assault Plaintiff, and he commented, "at least I would get 3 free meals a day," alluding to being incarcerated.

60. After more abusive behavior by Rappleye on July 25, 2024, Plaintiff rushed to the Town Hall and filed a complaint against Rappleye and called the Police.

**Plaintiff Reports the Sexual Harassment again in July 2024**

61. On July 25 and 26, 2024, Plaintiff reported the sexual harassment to Town Supervisor Heather Waters.

62. Plaintiff also called the State Police and lodged a complaint.

63. On knowledge and belief, in late July 2024 or early August 2024, Supervisor Waters notified Town Board members about Ms. Goodrich's sexual harassment complaint against Defendant Rappleye.

64. On Monday, August 26, 2024, the Town Board of the Town of Orange held a special meeting to discuss Plaintiff's sexual harassment complaints against Mr. Rappleye, and members of the press were present.

65. At the special August 26, 2024 Town Board meeting, the Town Board passed a resolution condemning Defendant Rappleye for his behavior. (See Exhibit A).

66. In their August 26, 2024 Resolution the Town Board members admonished Superintendent Rappleye and directed that he conduct himself in a dignified and professional manner when representing the Town of Orange and the people of the Town of Orange.

67. In the August 26, 2024 Resolution, the Town Board directed Superintendent Rappleye to not use discriminatory or harassing language, directed him to complete sexual harassment training, and directing him to refrain from one-on-one interactions with Town employees.

68. The August 26, 2024 Resolution states that the "Town determines that Superintendent Rappley's conduct rises to the level of misconduct, maladministration, malfeasance or malversion in office, and refers the removal of Superintendent Rappleye from elected office to the Schuyler County District Attorney."

69. The August 26, 2024 Town Board special meeting was widely reported in local media.

### John Rappleye Engages in a Campaign of Retaliation

70. Mr. Rappleye's retaliation against Plaintiff for airing her complaints at the August 26, 2024 Town Board meeting was swift and direct.

71. On Tuesday, September 3, 2024, just five business days after the August 26 Town Board meeting, Mr. Rappleye met with Schuyler County Civil Service Office, to submit the paperwork to remove Plaintiff Goodrich from her position as Deputy Highway Superintendent, and to demote her.

72. On Wednesday, September 4, 2024, Mr. Rappleye posted on his Facebook page that he had promoted another employee to the Deputy position, writing: "congratulations goes out to Elmer Webster on his being sworn in as Deputy Hwy Superintendent."

73. Defendant Rappleye retaliated against Plaintiff by filing a criminal complaint against her with the Schuyler County Sheriff's office, falsely alleging that she stole a document from his office.

74. When he filed the criminal complaint against Plaintiff with the Schuyler County Sheriff's office, Mr. Rappleye knew that the report was false.

75. Mr. Rappleye also became even more short-tempered and enraged at Plaintiff after reporting the sexual harassment.

76. Mr. Rappleye retaliated against Plaintiff by yelling at her, cursing at her, throwing objects at her, taking her shop key away, and giving her worse duties than others.

77. The retaliation against Plaintiff was so severe that it was intended to, and had the effect of, discouraging employees from complaining about Rappleye and reporting his

misconduct.

78. In a position statement submitted to the Division of Human Rights on October 8, 2024, legal counsel for the Town of Orange accurately wrote that "Rappleye continues to flout the letter and the spirit of the Town's public censure" of his conduct.

79. When he removed Plaintiff from her Deputy position, Defendant Rappleye blamed Plaintiff's lack of a Commercial Driver's License (CDL).

80. However, Defendant Rappleye chose to overlook the CDL when he hired and promoted Plaintiff and sexually harassed her and only raised it as an issue because she complained about and reported the sexual harassment.

81. Through her employment, Defendant Rappleye purposely undermined Plaintiff's ability to study for the CDL test by requiring her to spend hours with him driving around the Town in his pickup truck and not giving her adequate time to utilize Town equipment to prepare for the test.

82. Plaintiff had contractual right under the union contract to use the Town truck for training.

83. Mr. Rappleye knew that he had power and authority over Plaintiff if he could undermine her ability to obtain the CDL, and exercised that power to her disadvantage, and in order to get away with the sexual harassment.

84. Starting on December 15, 2024 to the present, Plaintiff has been on an approved leave of absence, due to the sexual harassment and the unrelenting retaliatory behavior that was directed toward her by Rappleye, creating a hostile work environment.

**EEOC and Division of Human Rights Proceedings**

85. Plaintiff filed three complaints with the EEOC concerning the sexual harassment and retaliation, the first of which was filed on about July 29, 2024.

86. Plaintiff requested a Notice of Right to Sue from the EEOC and intends to amend this Complaint with Title VII allegations upon receipt of the Notice of Right to Sue.

87. Plaintiff filed three complaints with the Division of Human Rights, and all such complaints have been administratively dismissed at her request, to enable her to proceed with her claims in Federal Court.

88. Plaintiff duly served a Verified Notice of Claim on the Town of Orange on or about September 19, 2024.

**CLAIMS FOR RELIEF**

**AS AND FOR A FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 and Equal Protection Clause**
**Sex discrimination/ Sexual Harassment**
(All Defendants)

80. Plaintiff realleges and incorporates by reference each and every allegation in all preceding paragraphs as if fully set forth herein.

81. By the acts and practices described above, Rappleye, in his individual capacity and under color of state law, sexually harassed and discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, including by both creating a hostile work environment based on sex and engaging in quid pro quo harassment, thus depriving Plaintiff of her rights under the Equal Protection Clause, in violation of 42 U.S.C. §1983.

82. At all relevant times, Rappleye was and is a policymaker for the Town of Orange, and his sexual harassment and discrimination against Plaintiff in the terms and conditions of her

employment and on the basis of her sex, thereby constituted a policy or custom attributed to the Town of Orange.

83. At all relevant times when serving as a policymaker for the Town of Orange, Rappleye believed he could sexually harass Plaintiff, as a female on his staff, with impunity, thus depriving Plaintiff of her rights under the Equal Protection Clause, in violation of Section 1983.

84. Policymaking officials' failure to train or supervise Rappleye concerning sexual harassment and discrimination in the workplace amounted to deliberate indifference to the rights of others at the Town, including the Plaintiff herein.

85. The failure of the defendants to properly train Rappleye and their employees about sexual harassment, harassment prevention, and the Town's internal complaint procedures, was a direct cause of the constitutional deprivations imposed on the Plaintiff.

86. Rappleye engaged in unconstitutional practices and conduct with malice and with reckless indifference to Plaintiff's federally protected rights.

87. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress, and humiliation unless and until this Court grants relief.

### AS AND FOR A SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 and Equal Protection Clause**
**Retaliation**
(All Defendants)

88. Plaintiff realleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

89. By the acts and practices described above, Rappleye, in his individual capacity and under color of state law, retaliated against Plaintiff for reporting sexual harassment and

discrimination, thus depriving plaintiff of her rights under the Equal Protection Clause, in violation of 42 U.S.C. §1983.

90. At all relevant times, Rappleye was and is a policymaker for the Town of Orange, and his retaliatory behavior against Plaintiff thereby constituted a policy or custom attributed to the Town of Orange.

91. At all relevant times when serving as a policymaker for the Town of Orange, Rappleye believed he could retaliate against Plaintiff with impunity, thus depriving Plaintiff of her rights under the Equal Protection Clause, in violation of Section 1983.

92. Rappleye and Defendant Town of Orange engaged in unconstitutional practices and conduct with malice and with reckless indifference to Plaintiff's federally protected rights.

93. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress, and humiliation unless and until this Court grants relief.

## AS AND FOR A THIRD CAUSE OF ACTION

**New York State Human Rights Law
Sex Discrimination/Sexual Harassment**
(All Defendants)

94. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

95. Article 15, Section 296 (1)(a) of the New York Human Rights Law, N.Y. Exec. Law prohibits discrimination and harassment in employment.

96. Plaintiff Goodrich was subjected to sexual harassment in the form of a hostile work environment, quid pro quo harassment and discriminated against in the terms and conditions of her employment because of her sex.

97. Defendants Town of Orange and John Rappleye each qualify as an "employer" under Executive Law §296(1).

98. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer damages including severe mental anguish and emotional distress.

99. Due to Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of the New York State Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION

### New York State Human Rights Law
### Retaliation
(all Defendants)

100. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

101. Article 15 § 296(7) of the New York Human Rights Law, N.Y. Exec. Law, prohibits retaliation for engaging in protected activity.

102. Plaintiff was retaliated against for opposing the sexual harassment against her.

103. Defendants Town of Orange and John Rappleye both qualify as an "employer" within the meaning of the New York Human Rights Law.

104. As a direct and proximate result of the Defendants' retaliation, Plaintiff has suffered and continues to suffer damages including severe mental anguish and emotional distress.

105. Due to Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of the New York State Human Rights Law.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Aiding and Abetting in Violation the
### New York State Human Rights Law
(Defendant John Rappleye)

106. Plaintiff re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

107. Article 15 § 296 (6) of the New York Human Rights Law, N.Y. Exec. Law, prohibits aiding and abetting discrimination and harassment in employment.

108. Plaintiff was subjected to sexual harassment in the form of a hostile work environment, quid pro quo harassment and discriminated against in the terms and conditions of her employment because of her sex.

109. As a direct and proximate result of Defendant's discrimination and harassment, Plaintiff has suffered and continues to suffer damages including severe mental anguish and emotional distress.

110. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor on all counts;

B. Declare that Defendants' actions violated Plaintiff's constitutional and statutory rights;

C. Award Plaintiff compensatory damages in an amount to be determined at trial;

D. Award Plaintiff punitive damages against Defendant Rappleye;

E. Award Plaintiff her reasonable attorney's fees and costs;

F. Grant injunctive relief to ensure that Defendants cease unlawful conduct; and

G. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 11, 2025
    Poughkeepsie, New York

                                            Respectfully submitted,
                                            LAW OFFICE OF LAURA WONG-PAN PLLC

                                            */s/ Laura Wong-Pan*
                                            Laura Matlow Wong-Pan
                                            42 Catharine Street
                                            Poughkeepsie, NY 12601
                                            (845) 218-1288
                                            LWP@Laurawongpanlaw.com
                                            Attorney for Plaintiff